IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

KRISTIN E. RANUM,

              Plaintiff,

     v.                                      OPINION AND ORDER

MICHELLE KING,                            21-cv-706-wmc
Acting Commissioner of Social Security,

              Defendant.[1]

---

       Plaintiff Kristin Ranum seeks judicial review of a final decision of defendant Michelle King, Acting Commissioner of the Social Security Administration, finding that Ranum was not disabled within the meaning of the Social Security Act. Ranum's primary contentions on appeal is that her bipolar disorder precludes her ability to work full-time, and the administrative law judge Debra Meacham ("ALJ") did not adequately consider Ranum's subjective complaints or the opinions of Ranum's treating psychiatrist who supports her claim. The court concludes that ALJ did not explain her decision enough to allow meaningful review, so the case will be remanded for further proceedings.

BACKGROUND

       Ranum applied for disability benefits on March 30, 2020, claiming that she could not work due to symptoms of bipolar disorder. Ranum had been treated for bipolar disorder for many years, but she alleged that her symptoms became disabling on December 9, 2019, when

---

[1] The court has amended the caption to reflect King's appointment as Acting Commissioner. Fed R. Civ. P. 25(d).

she was 50 years old.  (AR 22, 58.)   Before that date, she'd worked as a social worker for various mental health and community support agencies, dating back to 2003.  (AR 256.)  But in December 2019, she told her long-time treating psychiatrist, Dr. David Dowell, that she was experiencing too much anxiety to continue working full-time. (AR 380.)

Ranum tried to return to work as a hospital social worker in late December 2019, but she left the job in February 2020 after her psychiatric symptoms worsened and she became suicidal.  (AR 15, 298.)  She contacted Dr. Dowell for an emergency appointment, and he recommended she be admitted to the behavioral health unit at the hospital for psychiatric treatment.  (AR 298, 384–386.)  At the hospital, Ranum was agitated and paranoid, paced the hallways and had difficulty concentrating and sleeping.  (AR 298.)  She was started on a new medication and was discharged February 15, 2020.  (AR 301.)  Just two days later, she went to the emergency room after a suicide attempt.  (AR 312.)  She was admitted again to the psychiatric inpatient unit and her medication was adjusted.  (AR 318.)  She was discharged on February 21, 2020, but within a few days, on February 26, she was again admitted to the psychiatric inpatient unit due to ongoing suicidal ideation.  (AR 339.)  Her medications were once again adjusted and she was released on March 3, 2020, after her mood had improved and her suicidal ideation had decreased.  (AR 334.)

Between March 5, 2020 and April 14, 2021, Ranum saw Dr. Dowell for numerous appointments at which her medications were frequently adjusted.  During this time period, she tried taking the antipsychotics Olanzapine, Paliperidone (Invega), Quetiapine (Seroquel), and Hadol; the mood stabilizer Lithium; the benzodiazepine Lorazepam, the beta-blocker Propranolol, and a sedative.  (AR 390, 434–35, 437.)  During some appointments Ranum reported feeling less anxious, agitated, restless, suicidal, paranoid, dysphoric, and/or depressed,

while at others she reported increases in these feelings.  (*See, e.g.,* AR 390–91, 395, 399, 415, 425, 433–35, 437, 502.)  She frequently reported feeling anxious and overwhelmed by work, and her numerous medications made it difficult for her to get out of bed in the morning.  (AR 391, 441, 445, 502.)  Dr. Dowell continued to assess Ranum as having bipolar disorder, severe, with psychosis, which was in partial remission during some appointments and as being unable to work full-time.  (*See, e.g.* AR 392, 396)

During this time period, in April 2020, Ranum began working part-time as a case manager for Journey Mental Health, a mental health organization at which she had worked previously. (AR 16, 48, 246.)  She started slowly, working approximately 10 hours a week and managing only one person, but still had to leave work early on occasion due to anxiety.  (AR 415, 425.)  She gradually increased her time to 11 hours a week, with three to four clients. (AR 429.)  However, she became overwhelmed by the work and her supervisor encouraged her to reduce her time to 9 hours a week.  She performed most of her work from home, on the telephone, occasionally leaving to deliver medications or go for walks with her clients.

Ranum also applied for disability benefits during this period, but her application was denied both initially and on reconsideration, and she requested a hearing before an administrative law judge.  The hearing was scheduled for May 18, 2021.

Before the hearing, on April 22, 2021, Ranum was readmitted to the psychiatric inpatient unit at St. Mary's hospital after overdosing on Lorazepam and alcohol.  (AR 639.) She reported that she had been very agitated for the past few days and was trying to control her agitation.  (AR 630.)  She denied trying to commit suicide but later endorsed suicidal thoughts during her psychological assessment.  (*Id.*)  She explained that she did not like taking her medications due to significant side effects including sedation and weight gain and had

asked her psychiatrist to decrease dosages. (AR 606.) The decreased dosages of her caused her to become agitated, paranoid and dysphoric, leading to the overdose of alcohol and Lorazepam. (AR 586.) At the hospital, her dosages of Lithium, Quetiapine and Lorazepam were increased. (AR 612.) She remained in the psychiatric unit until April 29, 2021.

The administrative hearing was held on May 18, 2021, at which Ranum testified that she was currently on leave of absence from her part-time social work job following her psychiatric hospitalization. (AR 33.) When the ALJ asked Ranum if she could perform a "low stress type of job," Ranum responded that she could not because her anticipatory anxiety prior to work was too high. (AR 37.) In terms of chores, Ranum testified to planning meals and loading the dishwasher but not much house cleaning. (AR 44.) She testified that she could drive and goes to the grocery store, but often feels anxious and paranoid while there. (AR 44–45.)

The ALJ issued a decision unfavorable to Ranum in June 2021. (AR 10–27.) As an initial matter, the ALJ found that Ranum had the severe impairment of bipolar disorder (AR 16), but retained the residual functional capacity ("RFC") to perform work at all exertional levels with a variety of non-exertional limitations. (AR 17.) Specifically, the ALJ found that Ranum was limited to unskilled work involving simple, routine, and repetitive one to three step tasks, not requiring a fast-paced production line, assembly line or tandem tasks. She could have no more than occasional interaction with coworkers, supervisors, and the public and no more than occasional changes in the work setting. (AR 17.) She could maintain concentration, persistence and pace for these tasks for two-hour intervals throughout the workday before needed regular work breaks. (*Id.*) Relying on the testimony of a vocational expert, the ALJ found that although Ranum could not perform her past relevant work as social worker, she

4

could still perform work that was available in significant numbers in the national economy, including hand packager, housekeeping cleaner and circuit board screener.  (AR 22–23.)

Ranum appealed but the Appeals Council denied her request for review (AR 1–6), making the ALJ's decision the final decision of the Commissioner.

OPINION

The question before this court is whether the ALJ's decision is supported by "substantial evidence," *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020), meaning "sufficient evidence to support the agency's factual determinations" or only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).  In applying this standard, reviewing courts may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination." *Reynolds v. Kijakazi,* 25 F.4th 470, 473 (7th Cir. 2022).  "Rather, this court asks whether the ALJ's decision 'reflects an adequate logical bridge from the evidence to the conclusions.'" *Id.* (quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)).

Here, plaintiff challenges the ALJ's rejection of her treating psychiatrist's opinion, as well as Ranum's own description of her symptoms and limitations.  In assessing the persuasiveness of medical opinions, the ALJ is required to explain how well supported each opinion is and how consistent it is with other evidence in the record.  20 C.F.R. § 404.920c(a); 1520(c); *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022).  In determining the credibility of the claimant's allegations regarding the intensity and persistence of her symptoms, an ALJ considers several factors, including objective medical evidence, medication, treatment, daily activities, and any inconsistencies between the allegations and the record. 20 C.F.R. §

404.1529(c). "So long as an ALJ gives specific reasons supported by the record [the Court] will not overturn h[er] credibility determination unless it is patently wrong." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015).

Here, plaintiff's arguments regarding the ALJ's treatment of both Dr. Dowell's and her own statements are essentially the same, so the court will consider them together. In short, plaintiff argues that the ALJ disregarded plaintiff's and her psychiatrist's statements by concluding, without support, that plaintiff's disabling symptoms were due to her stressful work as a social worker, and that she would be able to work full-time if she only had a "less stressful" job. As explained below, the court agrees with plaintiff that the ALJ failed to provide a logical bridge from the evidence to her conclusion that plaintiff could perform a "less stressful job."

Dr. Dowell, plaintiff's long-time treating psychiatrist, completed a medical source statement in March 2021, detailing Ranum's mental impairments and the impact of those impairments on her ability to work. (AR 416–421.) He noted that he had been treating Ranum regularly for more than 10 years. (AR 416.) His current diagnosis was bipolar, mixed, moderate, but previously he had diagnosed her with bipolar, depressed with psychosis, and unspecified anxiety disorder. (AR 416.) Dr. Dowell's description of plaintiff's symptoms was similar to the symptoms plaintiff described in her function report and at the administrative hear, including sleep disturbance; mood disturbance; oddities of thought, perception, speech, or behavior; perceptual disturbances; social withdrawal or isolation; blunt, flat or inappropriate affect; illogical thinking or loosening of associations; manic syndrome; anhedonia or pervasive loss of interests; psychomotor agitation or retardation; paranoia or inappropriate suspiciousness; feelings of guilt/worthlessness; difficulty thinking or concentrating; suicidal ideation or attempts; and generalized persistent anxiety. (AR 35–45, 416–17.)

Dr. Dowell also noted that when Ranum is acutely ill she is paranoid and suicidal.  (AR 417.)  Even when she recovers, she is "anxious and has difficulty concentrating on tasks due to anxiety."  (*Id.*)  Although high doses of multiple medications improve her paranoia and mood, her "anxiety does not resolve."  (*Id.*)  Dowell reported that plaintiff's medications cause significant morning sedation that keeps her from working before the afternoon.  (AR 418.) Dr. Dowell also opined that her prognosis was "guarded – even with full treatment and good adherence has had full episodes 1 to 2 times per year with months to recover."  (AR 418.)  He noted that over the last 10 years, her ability to work has declined continuously and she has either been unable to work or tolerated jobs on a very part-time basis (about 10 hours a week).  (*Id.*)  He further opined that Ranum's impairments would cause her to be absent from work more than three times a month, and that she has poor to no ability to maintain regular attendance and be punctual with customary, usually strict tolerances; has poor to no ability to concentrate a normal workday and workweek without interruptions from psychologically based symptoms; poor to no ability to perform at a consistent pace without an unreasonable number and length of rest periods; poor to no ability to respond appropriately to changes in a routine work setting; and poor to no ability to deal with normal work stress.  (AR 419.)  Finally, he noted that if she remains at work when anxious, she is unable to think clearly or perform even simple tasks.  (AR 420.)  If not acutely ill, she might be able to function for short periods of time, but when acutely ill, she would not be able to work at all for up to three months (AR 420.)

The ALJ agreed with Dr. Dowell's assessment that plaintiff had moderate limitations in understanding, remembering or applying information and moderate limitations interacting with others.  (AR 21.)  But she found the rest of the opinion unpersuasive, stating that it was

"inconsistent with the other more persuasive opinion evidence, the claimant's intact cognitive abilities, and her ability to do some degree of driving, shopping, and household chores," as well as her "ability to reliably attend a less stressful job." (AR 21.).

Plaintiff argues that the ALJ did not adequately explain her reasons for rejecting Dr. Dowell's opinion, or plaintiff's own subjective symptoms, and that the reasons for her rejection do not provide the requisite bridge connecting the evidence and the ALJ's conclusion. The court agrees. Although the ALJ provided a fairly detailed summary of Dr. Dowell's treatment records and acknowledged plaintiff's numerous hospitalizations, medications and failed work attempts, she did not explain why she believed that Dowell's opinion was inconsistent with, or unsupported by, that record. For example, Dowell's opinion that plaintiff could not maintain regular attendance or complete a normal workday and workweek without interruptions from her psychologically based symptoms is supported by record evidence that plaintiff could not maintain full-time work due to her bipolar disorder in December 2019, was too sedated to work in the morning but often became too anxious or agitated to concentrate when she was not sedated, and could not even handle working more than 10 hours a week after her numerous hospitalizations.

Rather than adequately address this relevant, record evidence, the ALJ pointed to evidence that was not inconsistent with Dr. Dowell's opinions and plaintiff's own statements, or was unrelated to the functional areas at issue. Specifically, the ALJ noted "intact cognitive abilities," but neither Dowell nor plaintiff endorsed cognitive decline as the reason for her limitations. The ALJ also pointed to plaintiff's ability to do some degree of driving, shopping, and household chores, as well as attend church on occasion, but her ability to engage in some minimal personal activities cannot be equated to working at a sustained pace over an entire

8

workday.  Moreover, the ALJ failed to engage with the limitations plaintiff reported with those tasks—such as the anxiety and paranoia those activities caused her (*see* AR 381 (plaintiff became overwhelmed at church function even with limited, minimal interaction with others)); her use of anxiety medication for acute attacks that made her very tired (AR 35), and her dependence on her husband and children for daily living activities (including cooking and household chores). *See, e.g., Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013) ("[A] person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time."); *Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008) (remanding because ALJ ignored claimant's qualifications "as to how he carried out [daily living] activities").

The ALJ also appeared to reject Dr. Dowell's opinions based on her own finding that "job-related stress" caused many of plaintiff's symptoms and hospitalizations.  (AR 18.) However, although it is true that plaintiff reported work-related anxiety, the court agrees with plaintiff that the ALJ cited nothing in the record to support her finding that plaintiff could "reliably attend a less stressful job."  (AR 21.)  Although the ALJ limited plaintiff to "simple, routine, and repetitive one to three step tasks" without production requirements, the ALJ failed to explain how plaintiff could perform *any* new job in light of both Dr. Dowell's and plaintiff's statements, and record evidence, showing that plaintiff suffered from anticipatory anxiety and paranoia that could become debilitating, particularly when facing changes or learning new things that required concentration.  (AR 45–47.)  *See Martin v. Saul*, 950 F.3d 369, 373–74 (7th Cir. 2020) ("We have repeatedly cautioned that 'someone with problems concentrating might not be able to complete a task consistently over the course of a workday, no matter how simple it may be.'")  As plaintiff points out, her most recent job was not "fast-paced" or

requiring production quotas, and was still too stressful and overwhelming.  Her most recent position was flexible, requiring only 9 hours per week, mostly from home, and consisted primarily of talking on the phone or going for walks with people.  (AR 35–36.)  Moreover, her employer, a mental health organization, was accommodating and sympathetic to people with mental health issues, encouraging plaintiff to reduce her hours when stressed and permitting a lengthy leave of absence after her hospitalization.  (AR 35–36, 55.)

Finally, the ALJ pointed to the opinions of the state consultants, Susan Donahoo, Psy.D., and Therese Harris, PhD, who found plaintiff to be only moderately limited in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  (AR 63, 72–73.)  The ALJ stated that these consulting opinions were generally persuasive because they were "supported by [plaintiff's] abnormal moods and affects as well as her increase in symptoms when in stressful and fast-paced work environments."  (AR 21.) As plaintiff points out, these consultant opinions were issued in 2020, before her most recent hospitalization in April 2021, which caused her to take an extended leave of absence from her part-time job.  In finding these opinions more persuasive than Dr. Dowell's or plaintiff's own statements, the ALJ failed to acknowledge that the state consultants lacked more recent medical evidence arguably showing that plaintiff's symptoms could change and increase unpredictably, even without a "stressful and fast-paced work environment."

In sum, "ALJs [must] provide an explanation for how the evidence leads to their conclusions that is sufficient to allow . . . a reviewing court . . . to assess the validity of the

agency's ultimate findings and afford the appellant meaningful judicial review." *Warnell v. O'Malley*, 97 F.4th 1050, 1054 (7th Cir. 2024).  In this case, the ALJ's explanation of his reasons for rejecting Dr. Dowell's opinion and plaintiff's subjective complaints do not allow for meaningful review, so the court must remand the case to allow the ALJ to fully address the concerns raised in this decision.

## ORDER

IT IS ORDERED that the decision of the acting commissioner is REVERSED, and the case is REMANDED for further proceedings consistent with this opinion.

Entered this 23rd day of January, 2025.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

11